IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA**

      Plaintiff,

  v.

**TOMÁS RAMOS-GUTIERREZ,**

      Defendant.

**Case No. 6:19-cr-00313-MC**

OPINION AND ORDER

**MCSHANE, Judge**:

Both the defendant and the government have moved to dismiss the Information in this case. *See* ECF No.'s 36 & 57. In the best interests of justice, the Court GRANTS Mr. Ramos-Gutierrez's Motion to Dismiss Information, ECF No. 36. The Government's Motion to Dismiss Information, ECF No. 57, is DENIED as moot.

### BACKGROUND

In 2017, Mr. Ramos-Gutierrez was arrested in Lane County after getting into a fight with his spouse. Mr. Ramos-Gutierrez was charged with driving while suspended and harassment constituting domestic violence, both misdemeanors. While in Lane County custody, an Immigration and Customs Enforcement ("ICE") agent filed "an I-2247(A) (Immigration Detainer) with the Lane County Jail." ECF No. 37, Ex. A at 3. Despite this detainer, Mr. Ramos-Gutierrez's attorney advised him to plead guilty to both charges. The attorney apparently believed that a quick plea would likely lead to Mr. Ramos-Guiterrez case going unnoticed by immigration authorities. In retrospect, this "under the radar" maneuver turned out to be ill advised.

As part of his guilty plea, the state court entered a no-contact order between Mr. Ramos-Gutierrez and his wife. *See* ECF No. 37, Ex. B (Judgement). Upon release from jail, ICE arrested Mr. Ramos-Gutierrez and transported him to the Northwest Detention Center in Tacoma, Washington.

Throughout the rest of 2017 and the beginning of 2018, Mr. Ramos-Gutierrez appeared at four removal hearings before Immigration Judge ("IJ") John O'Dell. At the first hearing in November 2017, Mr. Ramos-Gutierrez appeared with a group of detainees where the group was advised of their "right to present [their] own evidence" and that they had "the right to apply for voluntary departure," which required a showing "merit[ing] a favorable exercise of the Court's discretion." ECF No. 37, Ex C at 3–4. At this initial hearing, Mr. Ramos-Gutierrez was granted a continuance to obtain counsel. *Id.* at 4.

The IJ granted Mr. Ramos-Gutierrez a continuance at his second hearing in December 2017 for the same reason. *Id.* at 6. But Mr. Ramos-Gutierrez was financially unable to obtain counsel and subsequently agreed to proceed without an attorney at his third hearing in January 2018. During this third hearing, the IJ found that Mr. Ramos-Gutierrez could be eligible for cancellation upon application from his spouse, so the matter was once again set over. But because of the no-contact order, Mr. Ramos-Gutierrez was unable to apply for cancellation. *Id.* at 19. The court made no independent inquiry into the desire of Mr. Ramos-Guiterrez's spouse, nor did they request a waiver from the state court to allow Mr. Ramos Guiterrez some level of third-party contact to determine whether his spouse desired to file the application for cancellation. Certainly, the IJ was under no prescription to determine these facts, but when a fact finder is making decisions that impact a family, perhaps the facts might actually matter.

Mr. Ramos-Gutierrez's fourth and final hearing took place on March 3, 2018. At this hearing, Mr. Ramos-Gutierrez applied for voluntary departure. *Id.* at 19–20. While Mr. Ramos-Gutierrez tried to explain to the IJ the circumstances surrounding his guilty pleas and why he should be eligible for voluntary departure, the IJ denied his request by reducing the equities of Mr. Ramos-Guiterrez's life to the following:

> Alright, um, sir, um, you do have some positive equities here but you have three criminal convictions here. You had an opportunity when you had Deferred Action as a Childhood Arrival, um, to remain in the United States and you went out and committed three different crimes including domestic violence and driving under the influence. I don't find that you've demonstrated that you merit a favorable exercise of the Court's discretion for voluntary departure so I am going to deny voluntary departure as a matter of discretion and I'm ordering you removed to Mexico. This is a deportation order. . . . [W]hen you plead guilty before a judge under oath, that has consequences and I'm not going to look behind the conviction … I mean I can't as a matter of law at this point. Well thank you sir for providing that information. I am still going to deny your application for voluntary departure and order you removed to Mexico. Do you understand the order sir?

*Id.* at 21. The IJ then asked Mr. Ramos-Gutierrez whether he would like to appeal the removal order. *Id.* at 22. After learning that the appeals process would take another three to five months, Mr. Ramos-Gutierrez accepted the removal order "as a final decision" and the IJ noted that Mr. Ramos-Gutierrez's right to appeal was waived. *Id.*

Mr. Ramos-Gutierrez was removed to Mexico City ten days later. As part of his removal, Mr. Ramos-Gutierrez could not reenter the United States for ten years. *See* ECF No. 37, Ex. D (Form I-294: Warning to Alien Ordered Removed or Deported). In 2019, Mr. Ramos-Gutierrez was found in the United States and charged with one count of illegal reentry under 8 U.S.C. § 1326(a). *See* ECF No. 14.

## DISCUSSION

Both parties agree that the Information against Mr. Ramos-Gutierrez should be dismissed with prejudice, with the only contention being whose motion the Court should grant. Mr. Ramos-

Gutierrez originally moved to dismiss by attacking the validity of his underlying removal proceeding from 2018. *See* Memo in Sup. of Mot. to Dismiss Info., ECF No. 37. After oral argument, the Court allowed the parties to file supplemental motions because of new information raised at the hearing. *See* ECF No.'s 47–56. While the Government originally voiced strong opposition to Mr. Ramos-Gutierrez's motion and filed a supplemental response after oral argument, the Government reversed their position less than three weeks later.[1] The Government alleged that given new evidence, that dismissal was "in the best interests of justice." Gov.'s Mot. to Dismiss Info. 1, ECF No. 57.

But the Court disagrees. Under Fed. R. Crim. P. 48(a), "The government may, *with leave of court*, dismiss an indictment, information, or complaint." (emphasis added). If the Court were to grant the Government's request, the "non-merits dismissal [will] circumvent a ruling on the invalidity of the 2018 removal order [and] is not in the best interests of justice." Opp'n to Gov.'s Mot. to Dismiss Info. 1–2, ECF No. 62 (quotation omitted); *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (explaining that the leave of court requirement is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection"); *see also United States v. Reyes-Romero*, 327 F. Supp. 3d 855, 899 (W.D. Pa 2018) (denying the government's Rule 48(a) motion on an illegal reentry indictment to prevent the "risk of recycling" prior removal order in future immigration proceedings).

For these reasons, the Court DENIES the Government's request for leave of court. The Court now turns to the merits of Mr. Ramos-Gutierrez's motion to dismiss information.

///

---

[1] It was at this time that Mr. Ramos-Gutierrez was again arrested because the Government had informed ICE that they were seeking a dismissal of this case. *See* ECF No. 65, Ex. F at 3.

**I. Mr. Ramos-Gutierrez's Motion to Dismiss Information**

The Government originally charged Mr. Ramos-Gutierrez with illegal reentry under 8 U.S.C. § 1362(a). ECF No. 14. Mr. Ramos-Gutierrez is collaterally attacking his removal order from 2018, which he has a right to do. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998) ("In a criminal prosecution under section 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." (citation omitted)). To successfully attack the underlying removal order, Mr. Ramos-Gutierrez must show that: (1) he exhausted all administrative remedies available to appeal the removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. §§ 1326(d)(1) – (3).

*A. Exhaustion of Remedies and Deprivation of Judicial Review*

Mr. Ramos-Gutierrez can "satisfy the first two prongs of section 1326(d) together upon a showing of one of three different scenarios." *United States v. Morales-Santiago*, 376 F. Supp. 3d 1105, 1115 (E.D. Wash. 2019) (citation omitted).

> First, both prongs are satisfied ''when the [IJ fails] to inform the alien that he had a right to appeal his deportation order to the [Board of Immigration Appeals].'' Second, both prongs are satisfied when the immigration judge fails to inform the defendant that he is eligible for a certain type of relief. Third, both prongs are satisfied if the defendant proves that his waiver of appellate rights was not considered and intelligent. Absent any of these three situations, a defendant must independently satisfy the first two prongs of section 1326(d).

*Id.* (quoting *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013)).

Mr. Ramos-Gutierrez argues that "his waiver of appeal was neither considered nor intelligent." Memo. of Law in Support of Mot. to Dismiss Info. 21, ECF No. 37. In *United States v. Melendez-Castro*, the court held that when an IJ denies a defendant "a genuine opportunity to

5 – OPINION AND ORDER

apply for voluntary departure or to present evidence of the factors favoring his relief," the first two prongs of section 1326(d) are satisfied due to invalid waiver. 671 F.3d 950, 954 (9th Cir. 2012). Mr. Ramos-Gutierrez raises a nearly identical argument here and, as discussed below, the IJ's failure to properly develop the record is apparent. It therefore follows that because the IJ denied Mr. Ramos-Gutierrez "a genuine opportunity" to present a compelling voluntary departure application, Mr. Ramos-Gutierrez's appellate waiver was neither considered nor intelligent. *Id.*

### B. Fundamental Unfairness

Mr. Ramos-Gutierrez next contends that the entry of the 2018 removal order was fundamentally unfair. "An underlying removal order is fundamentally unfair if an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and if 'he suffered prejudice as a result of the defects.'" *Id.* (quoting *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)). Mr. Ramos-Gutierrez alleges that the IJ violated his due process rights by failing to allow Mr. Ramos-Gutierrez a meaningful opportunity to apply for voluntary departure. The Court agrees.

In removal proceedings, a non-citizen can present evidence favoring a discretionary grant of relief from removal. 8 C.F.R. § 1240.11(a)(2). "Whether the IJ's actions prevented the introduction of significant testimony is critical to the ultimate question whether the alien had a reasonable opportunity to present evidence." *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1056–57 (9th Cir. 2005). While IJ's have "great latitude" when deciding "requests for voluntary departure, such discretion does not strip the inquiry of all guideposts." *Campos-Granillo v. INS*, 12 F.3d 849, 852 (9th Cir. 1993) (quotation omitted). "One such guidepost is the requirement that the agency 'must weigh both favorable and unfavorable factors.'" *Id.* (quoting *De la Luz v.*

*INS*, 713 F.2d 545, 545 (9th Cir. 1983)). And not only does an IJ have a duty to consider a non-citizen's favorable and unfavorable factors when considering a request for voluntary departure, but when a non-citizen appears without counsel, the IJ also has a heightened duty to "fully develop the record." *See Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (quotation omitted).

The IJ failed to properly develop the record here. First, the IJ did not consider the circumstances surrounding Mr. Ramos-Gutierrez's criminal charges in Lane County. While the IJ insisted that he could not look beyond the conviction, precedent holds that an IJ may reexamine a final conviction when considering discretionary relief. *Orega de Robles v. INS*, 58 F.3d 1355, 1358 (9th Cir. 1995). The IJ's failure to consider the context of Mr. Ramos-Gutierrez's convictions violated Mr. Ramos-Gutierrez's right to due process under the Constitution. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (explaining that the Fifth Amendment requires an IJ to allow a non-citizen facing removal "a reasonable opportunity to present evidence on his behalf").

The IJ also failed to fully develop the record by not "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] . . . all the relevant facts" surrounding Mr. Ramos-Gutierrez's positive equities. *Agyeman*, 296 F.3d at 877. Positive factors which support voluntary departure include:

> family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character.

*Campos-Granillo*, 12 F.3d at 852 n.8. While the IJ referenced "some positive equities," the record lacks any meaningful discussion about what those positive equites were. It was no more than a platitude without a foundation in thoughtful inquiry. The IJ should have elicited testimony

from the 20-year-old Mr. Ramos-Gutierrez that he came to the United States at the age of five, that he had lived in the United States for that entire time, that he had established significant ties to his local community through his schools and church, and that his removal would pose a significant hardship on his parents. *Id.* Without an adequate consideration or discussion of Mr. Ramos-Gutierrez's positive factors, and since Mr. Ramos-Gutierrez was *pro se*, Mr. Ramos-Gutierrez's due process rights were violated by the IJ's failure to fully develop the record. *Agyeman*, 296 F.3d at 877.

The Government insisted at oral argument that if all four hearings were considered together, the record was fully developed. But to reiterate, at no point did the IJ properly "weigh the favorable and unfavorable factors before making a determination on [Mr. Ramos-Gutierrez's] voluntary departure." *Morales-Santiago*, 376 F. Supp. 3d at 1117. The number of hearings in which a person is denied a meaningful opportunity to be heard does not somehow change the due process equation. Four opportunities to shop at a closed store does not make the store open. The Court thus finds that Mr. Ramos-Gutierrez's "due process rights were violated by defects in the underlying deportation proceeding." *Pallares-Galan*, 359 F.3d at 1095.

Because Mr. Ramos-Gutierrez has shown that his due process rights were violated, he must now prove that he was prejudiced. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004). "To establish prejudice, a person must show that there were 'plausible grounds' to grant him relief had the due process violations not occurred. This requires a showing of some evidentiary basis upon which relief could have been granted, rather than the fact that the relief was theoretically possible." *Morales-Santiago*, 376 F. Supp. 3d at 1118 (quoting and citing *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 (9th Cir. 2012)).

Mr. Ramos-Gutierrez had many positive equities which could form the evidentiary basis for granting voluntary departure, which includes: "(1) his residence in the United States from the age of five; (2) his ties to immediate family members who raised him in the United States; (3) the hardship that his family would face upon his removal; and (4) his relative youth at the time of his convictions and removal." Reply Memo. in Support of Mot. to Dismiss Info. 8, ECF No. 43 (citation omitted). And Mr. Ramos-Gutierrez was also erroneously prevented from explaining the circumstances of the misdemeanors he received as a nineteen-year-old. "It is plausible that, had this evidence been submitted, an [IJ] would have granted [Mr. Ramos-Gutierrez's] voluntary departure." *Morales-Santiago*, 376 F. Supp. 3d at 1118.

The Court would also like to note that the Government, when moving to dismiss Mr. Ramos-Gutierrez's charges, explained that "new evidence involving [the] defendant's state of mind, and defendant's personal circumstances and intent, . . . information the government could not have known until defendant provided it" motivated their position reversal. Gov.'s Reply to Def.'s Resp. to Gov's Mot. to Dismiss 3, ECF No. 68. But the Government would have known this information if the IJ had properly elicited testimony about this very information during Mr. Ramos-Gutierrez's multiple hearings. If anything, this only reaffirms the Court's determination that if this evidence was before the IJ, it is plausible that Mr. Ramos-Gutierrez's voluntary departure request would be granted. *Morales-Santiago*, 376 F. Supp. 3d at 1118.

In sum, the Court finds that Mr. Ramos-Gutierrez has satisfied all three section 1326(d) requirements and demonstrated that the underlying proceeding violated his due process rights. As a result, the 2018 "removal order cannot form the basis of an illegal reentry charge." *Id.*

///

///

## CONCLUSION

For these reasons, Mr. Ramos-Gutierrez's Motion to Dismiss Information, ECF No. 36, is GRANTED and the information is DISMISSED with prejudice. The Government's Motion to Dismiss Information, ECF No. 57, is DENIED as moot.

IT IS SO ORDERED.

DATED this 29th day of December, 2020.

                                                _s/Michael J. McShane_____
                                                Michael J. McShane
                                                United States District Judge